UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Norfolk Division)

| | | |
|---|---|---|
| MOTT MACDONALD, LLC<br>111 Wood Avenue South<br>Iselin, New Jersey 08830 | * * * * | |
| Plaintiff, | * * * | Civil Action No. _____ |
| FISHBURNE DRILLING, INC.<br>3219 Military Highway<br>Chesapeake, VA 23323 | * * * * | |
| Defendant. | * | |

## COMPLAINT

Plaintiff Mott MacDonald, LLC ("MM"), by undersigned counsel, files this Complaint against Fishburne Drilling, Inc. ("Fishburne") and states:

### PARTIES

1. MM is a limited liability company organized under the laws of the State of Delaware with its principal place of business located in New Jersey. No member of MM is a citizen of the Commonwealth of Virginia.

2. Upon information and belief, Fishburne is a corporation organized under the laws of Virginia, with its principal place of business in Chesapeake, Virginia, transacting business in the Commonwealth of Virginia. As such, Fishburne is a citizen of Virginia.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there exists complete diversity of citizenship among the Plaintiff and the Defendant, and the amount in controversy exceeds $75,000, exclusive of costs, interest, and attorneys' fees.

4. Venue is appropriate in this Court under 28 USC§ 1391(b)(2) because the actions giving rise to this matter occurred in this judicial district, more particularly on a portion of the Chesapeake Bay Bridge Tunnel known as Portal Island 2, located in Chesapeake Bay between the Hampton Roads area of Virginia and the Eastern Shore of the Commonwealth of Virginia.

## FACTUAL ALLEGATIONS

5. Chesapeake Tunnel Joint Venture ("CTJV") is the design builder for the Chesapeake Bay Bridge and Tunnel District Parallel Thimble Shoal Tunnel Project ("Project").

6. In part, the Project includes the design and construction of a 5,700-foot bored tunnel that will connect two southbound trestles of the existing Chesapeake Bay Bridge and Tunnel.

7. MM is under contract with CTJV to provide certain design services to CTJV for the Project.

8. Services to be provided by MM for the Project include an analysis of subsurface conditions in the area where the tunnel portion of the Project is to be constructed.

9. MM entered into a subcontract agreement with defendant Fishburne (the "Subcontract") that required Fishburne to perform certain services, including the drilling of certain borings and the collection of soils and subsurface data in the area of the Project where tunnel construction is planned to be performed. The Subcontract is governed by the laws of the Commonwealth of Virginia.

10. On or about January 11, 2017, Fishburne's scope of work was amended to require that Fishburne provide 12 cone penetration tests for a fixed price, all in accordance with the terms of the Subcontract.

11. After commencing work on the Project, on or about February 2, 2017, while Fishburne (or its subconsultant) was drilling to perform a cone penetration test ("CPT") on Portal Island 2 of the Project, the CPT rod broke.

12. Efforts by Fishburne to recover the broken CPT rod (designated "CPT 7A") were unsuccessful at the time and the broken rod or remnants of the broken rod were left in place by Fishburne.

13. Subsequently, by letter dated December 7, 2021, CTJV demanded that MM remove the broken CPT rod, and advised MM that CTJV would hold MM responsible for all costs associated with the recovery of the broken CPT rod and for any resulting impacts to the Project.

14. In correspondence dated January 31, 2022, March 18, 2022, April 19, 2022, November 4, 2022, and November 17, 2022, MM put Fishburne on notice of the demand by CTJV to locate and remove the parts of CPT 7A, and MM advised Fishburne that MM would hold Fishburne fully responsible for all costs related to or resulting from the CPT rod broken and left in place by Fishburne.

15. On or about October 24, 2022, efforts commenced, with Fishburne on-site, to locate and recover the abandoned CPT 7A, with CPT 7A being located on or about November 3, 2022.

16. In correspondence dated November 4, 2022, MM advised Fishburne that it needed to determine and advise MM how Fishburne would proceed with the rod removal, and again advised Fishburne that any costs associated with the removal efforts would be its responsibility.

17. In a letter dated November 11, 2022, from Fishburne's counsel, Fishburne provided a work plan for the removal of CPT 7A.

18. In a letter dated November 17, 2022, from MM's counsel, MM identified aspects of the proposed removal workplan that appeared deficient and required additional clarification.

19. The November 17, 2022, letter also requested that Fishburne and its selected subcontractor provide current certificates of insurance, as well as a reiteration to Fishburne that Fishburne bears the ultimate responsibility for the retrieval efforts and the costs associated with that effort.

20. By letter dated December 1, 2022, Fishburne provided a revised work plan for the recovery of the broken CPT rod, according to which CTJV, MM and Fishburne would each perform certain work for the recovery and extraction of the broken CPT rod.

21. By letter dated December 7, 2022, MM provided comments to the technical features of Fishburne's revised workplan for the CPT rod retrieval, and again advised Fishburne that all costs, without limitation, including those charged by CTJV for its participation in Fishburne's recovery plan, were Fishburne's responsibility.

22. In the December 7, 2022, letter from MM's counsel to Fishburne's counsel, Fishburne was again requested to provide a current certificate of insurance for Fishburne.

23. Work to retrieve the CPT rod began in early January, 2023.

24. Although Fishburne returned to the project site to participate in the work to retrieve the CPT rod, Fishburne failed and refused to provide MM with a current certificate of insurance as required by the terms of the Subcontract.

25. Counsel for MM sent an email to counsel for Fishburne dated January 9, 2023, stating that Fishburne had still not provided a certificate of insurance, and advised Fishburne's counsel that Fishburne's presence on site and its participation in the work to retrieve the broken CPT rod did not relieve Fishburne in any manner from the requirement for appropriate insurance,

nor had there been a waiver of any type by MM with regard to the requirement for insurance covering Fishburne's work.

26. The broken CPT rod was successfully recovered sometime during the week of January 9, 2023.

27. Thereafter, CTJV issued two (2) backcharges to MM, both dated February 7, 2023, for costs incurred by CTJV in connection with the recovery of CPT 7A.

28. In addition to the costs incurred and backcharged to MM by CTJV, MM also incurred costs for efforts it incurred in the recovery of the broken CPT rod.

29. By letter dated March 3, 2023, MM demanded that Fishburne assume responsibility for the costs arising out of or resulting from recovery of the broken CPT rod and indemnify MM in accordance with the terms of the Subcontract for all such costs and expenses, including reasonable attorney's fees and expenses, incurred by MM.

30. Despite the express terms of the Subcontract, Fishburne has failed to respond to MM's demand for payment and indemnification.

31. MM has complied with all duties required of it under the terms of the Subcontract.

## Count 1-Breach of Contract

32. Paragraphs 1 through 31 above are incorporated as though fully set forth herein.

33. The parties, for valuable consideration, entered into a valid and enforceable subcontract that required Fishburne to perform certain services in return for money payments by MM.

34. MM has fully paid Fishburne all sums due Fishburne under the Subcontract.

35. Article 3 of the Subcontract required that all services performed by Fishburne pursuant to the Subcontract would be performed in accordance with the standard of care, identified in the Subcontract as Good Industry Practice.

36. By breaking and leaving in place CPT 7A, Fishburne's actions constitute a failure to perform its services in accordance with Good Industry Practice, and constitute a violation of the standard of care by Fishburne with respect to the services it provided.

37. Fishburne's failure to meet the standard of care by breaking and leaving in place CPT 7A was a negligent act on the part of Fishburne or its subconsultant.

38. The terms of the Subcontract also required Fishburne to correct or revise any errors, omissions or other deficiencies in services provided by Fishburne without additional compensation, and states "the SUBCONTRACTOR shall remain liable for the consequences of such errors, omissions and deficiencies."

39. Fishburne's failure to assume liability and its failure and refusal to correct or revise the errors, omissions or other deficiencies in its services with respect to CPT 7A constitute a breach of contract by Fishburne.

40. By the express terms of the Subcontract, Article 5.16, Fishburne has a duty to indemnify and hold MM harmless from "any and all claims, demands, liabilities, damages, losses, costs and expenses (including court costs, reasonable attorney's fees and expenses) … of any nature whatsoever in any way arising out of or resulting from performance by SUBCONTRACTOR of the Services required under this Agreement… to the extent caused by (a) any negligent act error or omission or (b) breach of contract by SUBCONTRACTOR, SUBCONTRACTOR'S consultants or anyone directly or indirectly employed by them or anyone for whose acts they may be liable."

41. MM has incurred damages as a direct result of the failure by Fishburne to perform its services under the Subcontract in accordance with the standard of care, and has caused MM to incur costs and damages that to date include backcharges from CTJV and MM's own costs associated with addressing the recovery of the CPT rod broken and left in place by Fishburne, as well as efforts to require Fishburne to address its obligations under the Subcontract.

42. Fishburne's negligent performance of its services and its refusal to indemnify MM in accordance with the terms of the Subcontract constitute a material breach of contract on behalf of Fishburne for which MM is entitled to judgment in its favor in an amount not less than $372,412.29. MM's damages will continue to increase because MM continues to incur additional costs, including attorneys' fees, for pursuing indemnification from Fishburne.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Mott MacDonald, LLC respectfully prays for judgment against Defendant Fishburne Drilling, Inc. to include the following:

A. An award of damages in an amount not less than $372,412.29;

B. Pre-judgment and post-judgment interest, costs and attorney's fees; and

C. Such other relief as this Court may deem just and equitable.

Dated: April 21, 2023

Respectfully submitted,

MOTT MACDONALD, LLC

By Counsel

*[signature]*

Brian J. Vella, Esquire (VSB #24305)
Jacob Bolinger, Esquire (VSB# 92116)
HAYNES AND BOONE, LLP
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Telephone: 703-847-6300
Facsimile: 703-847-6312
Brian.Vella@haynesboone.com
*Counsel to Plaintiff Mott MacDonald, LLC*

8